May it please the court, Philip McGrady from the Edwards Law Firm in Billings, Montana, on behalf of the Plaintiff's Appellants, Central Montana Railroad. I'd also like to take this opportunity to introduce Ms. Carla Allen, who is the General Manager of Central Montana Railroad. She's a resident of Denton, Montana, which is a community of about 250 people along the Geraldine Line. She also drives trains for CMR. I'll be dividing the argument with... Still using GP9s. I don't know that, Your Honor. Yes, okay. I'll be dividing the argument with my senior partner, Mr. Cliff Edwards, who happens to be a native of Denton, Montana, himself. The procedure of this case... You won't mind if an L.A.-based judge... I'm sorry? You won't mind if an L.A.-based judge hears the argument? I will not. And I flew. I didn't take the train. That's fine, Your Honor. The procedure of this case is complicated, but there's one thing that's simple. The settlement agreement entered into on September 5, 1984, between the State of Montana and Burlington Northern Railroad is not subject to arbitration. The District Court initially recognized that, but in an inexplicable and bizarre ruling issued on April 13, 2010, the District Court reversed itself and flip-flopped, and in the process, ignored not only its own previous decisions, but the order from this Court issued in July of 2008. Well, did it? I mean, in essence, there were two separate agreements. The District Court confirmed the arbitration award as to the 86 agreement, but then granted summary judgment, which you never opposed, on the issue as to whether or not they could go back and, in essence, relitigate the issue over what is a paragraph 9.2 of the 84 agreement and recontest how the rates are going to be charged as between BNSF and Montana Rail. Well, what the District Court initially recognized, and this Court affirmed, was that the interchange agreement is the only contract that's subject to arbitration. The settlement agreement is not subject to arbitration. You're not listening to my question. You lost on summary judgment. You didn't have an adverse arbitration on the 84 agreement. You have a judgment from the United States District Court that adjudicates your dispute under the contract and says you lose, and you never opposed that motion. The basis for the judge's decision was that, and I'll read directly from the judge's decision, and he didn't just decide. He decided that the arbitration panel had decided the merits of the settlement agreement before he issued his decision granting the motion for summary judgment. The settlement agreement has never been decided on the merits of the case. What the District Court... You wanted to relitigate before the District Court the question of what rate may be charged for breach of the 84 agreement, right? No, there's two separate contracts. I understand that, but the 84 agreement contains the same rate provision that you arbitrated and lost on. Well, you've got to understand what it is. The per-loaded car rate. The per-car rate is included in the 84 settlement agreement, and it's also included in the 86 interchange agreement. And you lost on that issue in the arbitration. The arbitration said that BNSF was entitled to terminate the 86 interchange agreement, and then a summary judgment motion gets filed to preclude you from relitigating that same question under the 84 contract, and you don't oppose the motion. We opposed the motion by filing a motion for voluntary dismissal. What happened was... We'll talk about that in a minute. What happened is the Attorney General of the State of Montana looked at what was happening and said that Burlington Northern is going to terminate the settlement agreement based upon an illegal arbitration ruling. We've got a factual finding from the District Court that your purported voluntary dismissal was nothing more than laying in the weeds, waiting until you suffered adverse rulings and arbitration in the District Court, and then attempted to weasel out of the litigation that had been pending for years in the District Court by proffering this voluntary dismissal. In essence, what the District Court found was that you and the state have colluded in an attempt to deprive the federal court of jurisdiction over this case. The District Court's decision says this. It says, A final arbitration decision regarding the 1986 agreement, and thus the 1984 agreement, was issued on May 15, 2009. He's referring to the arbitration ruling. We've got two separate cases here. We've got the 2005 lawsuit, which was brought on behalf of Central Montana Railroad. Count one was breach of contract, breach of the settlement agreement. We had two claims brought by CMR, tort-based claims. But count one- Which you lost on summary judgment, right? The only- we lost- what we lost was the fact that the settlement agreement- well, what the judge determined was that the settlement agreement had been satisfied based upon the arbitration ruling. The arbitration ruling- I thought when he confirmed the arbitration, he specifically said the breach of contract dispute regarding the 84 agreement is not affected by this order, which simply confirms the arbitration award for the 1986 agreement between the parties. That's- That's what he said, and then you object. Well, the arbitrators talked about and opined on the 1984 agreement, which was in response to arguments that you raised before the arbitrators. Isn't that correct? Well, we had to raise them before the arbitrators because the two issues which were demanded- sent to the arbitration panel was, number one, whether the interchange agreement could be terminated. And if it was terminated, what's the system of payment? Our argument before the arbitration panel was that the 84 settlement agreement then set the terms for the interchange agreement. That's not- And the arbitrators didn't agree with that? The arbitrators did not agree with that. Okay, so what did they do wrong? They didn't do anything wrong about the 1984 agreement. They didn't convert it to an arbitration on the 84 agreement except had to respond to your argument. No, they did. They did. They determined. They said explicitly in the arbitration ruling, they said that BNSF has fully satisfied its obligations under the settlement agreement. They decided the 1984 settlement agreement. The arbitration panel decided the 1984 settlement agreement. What should they have done in response to your argument to deal with it with respect to the 1984 agreement? Well, what they did is they instituted a Rule 11, what they call a Rule 11 accounting system for payments. They rejected our argument that the 86 interchange agreement- that the rate should be then set by the 84 settlement agreement. But that's not the same thing as saying that the 84 settlement agreement was subject to arbitration. The state of Montana never agreed to arbitrate the 84 settlement agreement. And the 84 settlement agreement got decided by the arbitration panel. And after the district court in July of 2009, I believe, when the district court said the settlement agreement, the district court confirmed the arbitration award, but the district court said the settlement agreement is not affected by this order. That's what I just read. But then the problem is in April of 2010, the district court said- the district court flip-flopped and said a final arbitration decision regarding the 86 agreement, and thus the 84 agreement was issued on May 15, 2009. Those are inconsistencies from the district court. I guess the problem I'm having with your argument is I look at what Mr. Christensen and Mr. Bratton wrote in the arbitration agreement, and basically what they're saying is BNSF can properly terminate the settlement agreement, and we reject your argument that they cannot do so, that they have to maintain the per-car payment, as originally said in the settlement agreement, forever. And, I mean, the arbitrators are simply responding to an argument that you made. No, our argument was that the 86 interchange agreement- there's two issues, whether the interchange agreement can be terminated, and these were the issues framed by the BN. But the whole thrust of the termination was they didn't want to be making per-loaded car payments anymore, right? Which is dictated by the 1984 settlement agreement. Right, and you argued, no, their feet have to be held to the fire in the 86 interchange agreement. They've got to pay per-loaded car forever. And the arbitrators ruled, interpreting the terms of the 86 interchange agreement, no, they don't have to pay per-loaded car forever. They can properly terminate by giving the appropriate notice, et cetera, et cetera. We said that the settlement agreement was not subject to arbitration. That's what we said, and while we were awaiting a ruling from this court on the district court's denial of Burlington Northern's request for arbitration, we then went to the federal district court in Great Falls and requested a preliminary injunction asking that this not be subject to arbitration. And we ultimately said, we're not going to enjoin the arbitration from going forward. You're going to have to arbitrate because that clause is enforceable under the 86 interchange agreement. That's what went to arbitration. And this is the order from Judge Malloy in the 2007 case when we filed a motion for a complaint requesting a preliminary injunction. Judge Malloy said this, CMR relies, when he denied our motion for a preliminary injunction, he said CMR relies entirely on an order dated January 31, 2007 in CMR BNSF. That case, he's referring to the 2005 case, deals with an alleged breach of the competitive rate agreement contained in the settlement agreement. Judge Strong's denial of BNSF's motion to arbitrate disputes arising from the settlement agreement has no bearing on this case. And that's exactly what the district court... This case meaning the enforceability or breach of the 86 agreement, right? He said that the 86 agreement is the only thing subject to arbitration. That's what you were trying to enjoin. And he said, no, I'm not going to issue the injunction. Right, and so the 86 interchange agreement was then arbitrated. But the arbitration panel had no authority to make a decision on the 84 settlement agreement. Can I ask you to pinpoint where the district court found that the arbitration determined the 1984 settlement agreement? Yes, it's in the April 13, 2010 decision. What page? It's in our, we refer to it as an appendix rather than the excerpts of record, but it's at page 602 and 603 where it says, I'm sorry? I didn't say anything. Where it says, a final arbitration decision regarding the 86 agreement and thus the 84 agreement was issued on May 15, 2009. And then he also says on page 602, any distinctions between the 84 agreement and the 86 agreement are artificial. They're not artificial. And that's the point that the descending member of the arbitration panel made is that the 84 settlement agreement includes per car payments and it includes this predatory pricing. Burlington Northern agreed not to enter into any sort of predatory pricing. And that was what the descending member of the arbitration panel says. There needs to be a hearing, an evidentiary hearing, to determine whether the 84 settlement agreement was terminated. That has never happened in this case. And the district court. Because it's the descending arbitrator's view. That doesn't carry the day. That's not part of the arbitration award. Well, the arbitration, the rule from Comedy Club, the 2009 decision from this court, says an arbitration panel exceeds its authority when it makes a determination that it's not allowed to make. It's a matter of contract. The ability to arbitrate is a matter of contract between the same parties. Here we've got different parties. The state of mind. Well, now wait a second. You initiated this action through an assignment. So you stood in the shoes of the state of Montana. You are clearly in privity. Only for the interchange agreement, the 86 interchange agreement, which was being arbitrated. The interchange agreement is between Central Montana Railroad and Burlington Northern. The 84 settlement agreement is between the state of Montana and Burlington Northern. I thought I read language in the assignment agreement that said that you were essentially stepping in. Yeah, I'm looking at page 1, appendix 120 of the purported assignment agreement between the state and CMR, which basically says that the state is assigning to Central Montana Railroad in its entirety all of the state's rights under paragraph 9 of the contract. But that doesn't mean that the 84 settlement, that CMR had the ability to submit the 84 settlement agreement to arbitration. The only contract subject to arbitration was the 1986 interchange agreement. Well, the question, though, is whether or not the state is bound by the rulings when you have an assignment of the state's rights. In essence, you had the same incentive because you had accepted the assignment that the state would have had in litigating all these questions. Now the state is trying to come back in this new action and pretend that none of this ever happened by this revocation of assignment. The new action is based upon the termination, Burlington Northern's termination of the per-car payment and the fact that they're precluded from predatory pricing. That's the new action. But you didn't oppose that motion in front of the district court, and the district court made a finding of fact that your purported revocation of assignment was nothing more than an attempt to evade the jurisdiction and enforceability of the district court's awards. We opposed the motion for summary judgment by following this court's precedent, which allows us to move for a voluntary dismissal, and we met the requirements for moving for voluntary dismissal. And what's happening in the state court is a completely different case, a completely new case, based upon the 1984 settlement agreement, which precludes Burlington Northern from predatory pricing. That has never been decided, and I have used up my senior partner's rebuttal time. You'll never make senior partners. You've done fine. Good morning. Randy Cox for the BNSF. With me is Matt Hayhurst. CMR said at page 22 of the opening brief that in referring to the arbitration panel, they said, quote, the 1984 settlement agreement was not for the panel to decide in any way, shape, or fashion, end quote. But if we look at SER Supplemental Exeter Record 93 and 94, we find that the very first thing CMR told the arbitration panel was the interchange agreement must be interpreted and applied in light of the 1984 settlement agreement and more explicitly, what they said was the panel's resolution of the issues in this dispute will require an exercise in the construction and interpretation of the controlling Montana settlement agreement of 1984 and the subsequent subordinate interchange agreement. Now, except for the fact that the words subordinate and controlling aren't found in those agreements, they're just two agreements relating to the same transaction, CMR was exactly right in telling the arbitration panel that, and the arbitration panel was exactly right in taking that issue up and ultimately in rejecting the arguments. Having put that issue into play, having said our defense is that you cannot terminate the interchange agreement because the settlement agreement prevents it, and having that issue determined, they're done on that issue. They made that same argument all the way through until they got here, and then they said, no, no, nobody was supposed to mess with the 1984 settlement agreement. That's simply not arbitrable. And of course, the prior ruling from this court was that counts one, two, and three of the complaint that were before the district court were not subject to the arbitration clause of the interchange agreement, but it certainly didn't mean that everything under the settlement agreement is off-limits for all time. Okay, so just to clarify, the magistrate judge wrote after the arbitration the passage that I read before, which specifically states in confirming the arbitration award that it did not affect, this is, does not affect the 1984 agreement. Okay, so the breach of contract dispute is not affected, which simply confirms by this order, which simply confirms the award. And then we go to the ruling on summary judgment and the denial of the Rule 41 motion, and as counsel pointed out, which I had at page 602, the court characterizes, and I guess it's Magistrate Judge Strong, as I recall, said a final arbitration decision regarding the 1986 agreement, and thus the 1984 agreement was issued on May 15, 2009, which was then confirmed by the court. And then later at 616, now this is where he's ruling on the Rule 41, I believe. He is saying that he invokes the 1986 agreement arbitration and says that the 1986 agreement is an essential part of the 1984 agreement, and so on. He talks about, then on 616, talks about what the arbitration panel found about not requiring BNSF to continue to make per-card payments, and then ultimately says the issue, whether BNSF owes per-card payments to either CMR or the State of Montana under either the 1984 or 1986 agreement has been fully and finally adjudicated by the arbitrators and the confirmation of their award. CMR and the State of Montana lost their argument. So, A, is that inconsistent? Now, the question is, that's invoked in the context of, as I say, denying the Rule 41 motion. So, I mean, the court invoked other reasons for denying it, but could you clarify what these statements mean for your side of the case? Yes, I believe that I can. After the arbitration award was confirmed, the court correctly said that the confirmation of the award doesn't affect the 1984 agreement, and the 1984 agreement was, of course, in play in Count 1. When the issue then arose later and on the Rule 41 motion and the court is examining what's happening and can the CMR be allowed to slip out the back door of the courthouse when our motion for summary judgment is pending, the arguments that they were making were the very same arguments that had been made to the arbitrators and in opposition to the arbitration of the... or confirmation of the arbitration award. So what the judge was looking at is, if you're making the same arguments, those arguments have been lost. And then as to whatever was outside of that issue in Count 1, that is the breach of the settlement agreement, still at least potentially live in the litigation, that was what our motion for summary judgment, which they did not oppose, was for, was to dispose of the rest of it. There's one other issue that I want to point out, and it's one of those issues that I think is important and it kind of cropped up in our thinking a little bit late, but the argument by the appellant is, and I heard counsel say, well, we were forced to make our arguments about the 1984 settlement agreement in the arbitration because that was just what was happening to us. But the fact is, when they filed the separate injunction action and the TRO was denied and Magistrate Strong recommended denial of the injunction and Judge Siebel confirmed the denial of the injunction and denied it, adopted the findings and recommendations, we had had in that case a counterclaim for seeking an order to arbitrate. When the injunction action was denied, Judge Siebel issued a final order that said the claims are dismissed and the parties are ordered to arbitrate. That was an appealable order under the comedy club rationale because it was final. Everything in the case had been disposed of and they had, under appellate rule, 4A, 7A, I.I., 180 days to appeal, just like in comedy club, and there was no appeal. So to the extent that their argument is, we were forced into an arbitration and forced to make an argument in that arbitration that we shouldn't have had to make, that's foreclosed to them by their failure to appeal the order dismissing their injunction action and ordering arbitration. The issue, and I don't want to take up additional time if there aren't questions. I'm happy to answer questions, but it seems quite simply to us that having put the 1986 interchange agreement into play, which they specifically told the arbitrators they were required to do, and having lost that in front of the arbitrators and having lost it at every turn in federal court that they are, in fact, foreclosed from that, which makes the Rule 41A dismissal issue a lot easier because there was just one more order coming down. They could have opposed it. They could have filed their own statement of disputed facts in opposition to our statement of undisputed facts. They could have come in and said, we think we should be allowed to dismiss, but in the meantime we're going to oppose this motion. They did not do that. They put all of their eggs in the basket of the Rule 41 dismissal. As Judge Strong put it, he said, CMR appears to have thrown in the towel on the motion, and that is exactly what happened. Well, he made a finding to that effect. He did. That, in essence, this was an end run and an attempt to get out of federal court because CMR was losing at every turn. Now, I guess the question I have is, what's happened to the Fergus County action? Is it now on appeal to the Montana Supreme Court? It is. In the Fergus County action, what happened is the judge issued an order refusing to reinstitute per car payments. He said the termination of the interchange agreement is the status quo. Nevertheless, I'm going to enjoin BNSF from taking the position that it has no obligations under the 1984 settlement agreement and enjoin them from refusing to sign a new contract if a new contract is submitted to them with certain conditions. That is on appeal to the Montana Supreme Court, and it has been briefed. Maybe I'm making your argument for you, but why shouldn't the Montana District Court have accorded full faith and credit to the summary judgment order of the federal district court resolving those issues? We did make that argument. I appreciate all the help I can get. Well, I can't help you with the Montana Supreme Court, but I'm just a little puzzled by why a state district court judge in the face of an order resolving these issues nonetheless decides it's going to go forward. Did you seek an injunction? What would that be? I can't remember whether that's an obscure doctrine where federal courts enjoin state court proceedings. Did you seek such relief? We did. There were two things that happened. One is that we requested that the district court judge Strong enjoin the prosecution of the state court action, and there was no ruling on that for quite some time until we got to a hearing. We got to a hearing on the injunction motion by the state and on our motion for judgment on the pleadings. The judge in the state court action denied our motion for judgment on the pleadings and granted the injunction that wasn't requested. I mean, they said make them do the per-car payments, and the judge refused to do that but issued this other injunction. The motion for judgment on the pleadings denial is not an appealable order, but the injunction motion is, and so that's what's up in front of the court. Okay. Unless there are further questions. No, I think not. Thank you. I'll give the other side a minute for rebuttal. Save your bacon. I was going to say, Judge Fisher, you did save him. He's still on the track. As I have listened to the arguments over all of these years in this case, and after being in courtrooms for 37 years, I get more and more befuddled by the decisions that have come in this case. Very simply, Judge Strong, who said at oral argument on all of these matters that I'm going to grant your Rule 41 motion, the Ninth Circuit tells me I should. We covered that thoroughly in our brief. And then in a remarkable flip-flop and a scathing order later, he, as Judge Coleman has pointed out, chastised us. But he had told us right after the oral argument, on the record, it's part of the appendix here, that he was going to dismiss it, and he should have. He made all of the findings. He went through the four factors and found that the Rule 41 was appropriate and proper. And then in his following written memorandum, he used as a basis for why summary judgment was being granted the fact that the arbitrators had found that the 84 agreement had been satisfied. Now, that's a patent violation of Judge Strong's January 07 argument, I mean, opinion. It's in patent violation of this court's, July. That we have in the briefs. Okay. And to me he made a good argument on that. All right. I am hopeful that, you know, as I listen to the questions, of course hope springs eternal. But I really implore this court to carefully look at what has happened and the flip-flops that happened at the magistrate judge. And I ask that he be reversed and our Rule 41 be directed to be entered. Okay. Thank you, counsel. Thank you all for an interesting case. And we will stand in recess.
judges: Fisher, Gould, Tallman